UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Jamie Jayne-Chandler

     v.                        Civil No. 18-cv-606-JL
                                         Opinion No. 2019 DNH 121
Commissioner of the
Social Security Administration

**ORDER ON APPEAL**

Jamie Jayne-Chandler has moved to reverse the Social
Security Administration's ("SSA") decision to deny her
application for a period of disability and disability insurance
benefits. An administrative law judge ("ALJ") at SSA found that
Jayne-Chandler, despite having severe impairments, retains the
residual functional capacity ("RFC") to perform a range of work
at all exertional levels, subject to certain limitations, and
thus is not disabled, as defined by the social security
regulations.[1] See 20 C.F.R. § 404.1505(a). This decision was
affirmed by the Appeals Council and thus became the final
decision on her application. See id. § 404.981. Jayne-Chandler
then appealed the decision to this court, which has jurisdiction
under 42 U.S.C. § 405(g) (Social Security).

---

[1] Pl. Mot. for Order Reversing Decision (doc. no. 8); see also
Pl. Reply (doc. no. 12).

On appeal, Jayne-Chandler raises five issues of fact or law regarding the ALJ's step 3 and step 5 determinations. See LR 9.1(b). The SSA Acting Commissioner contests these issues and has cross-moved for an order affirming the ALJ's decision.[2] See LR 9.1(e). After careful consideration, the court denies Jayne-Chandler's motion and grants the Acting Commissioner's cross-motion to affirm the SSA's final decision.

## I.   Background[3]

On September 1, 2017, an ALJ followed the established five-step sequential evaluation process, see 20 C.F.R. § 404.1520, and found that Jayne-Chandler is not disabled under section 216(i) and 223(d) of the Social Security Act.

At Step 1, he found that Jayne-Chandler had not engaged in substantial gainful activity since December 15, 2015.[4]

At Step 2, he found that Jayne-Chandler had three severe impairments that significantly limit the ability to perform basic work activities – Bi-Polar Disorder, Depression, and

---

[2] Doc. no. 11-1.

[3] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their Joint Statement of Material Facts (doc. no. 12) is incorporated by reference.

[4] Admin. R. at 15.

Anxiety.[5]  In doing so, he declined to find that Jayne-Chandler's degenerative disc disease diagnosis constituted a severe impairment because Jayne-Chandler had not alleged it was severe and because the disease appeared to be improving under a conservative treatment plan.[6]  He also declined to find that her obesity, as evidenced by biometrics, constituted a severe impairment, after finding that there was no evidence that her obesity had any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning.[7]  As such, the ALJ did not integrate obesity-related limitations into the RFC and instead only considered the potential impact of obesity on Jayne-Chandler's co-existing severe impairments.[8]

At Step 3, he found that Jayne-Chandler's mental impairments, considered both individually and in combination, did not meet or medically equal the severity criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[9] In making this determination, he applied the recently revised "Paragraph B" criteria and found that Jayne-Chandler had

---

[5] Id.

[6] Id. at 16.

[7] Id.

[8] Id.

[9] Id. at 16-20 (emphasis added).

moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself.[10]  On the entire record, he found that Jayne-Chandler retains the residual functional capacity "to perform full range of work at all exertional levels," subject to the non-exertional limitations that she perform simple and routine tasks and have no more than frequent interaction with others.[11]  Although Jayne-Chandler suffered symptoms of her mental impairments, the ALJ found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with medical and testimonial evidence showing her limitations were mild to moderate for the purposes of listings 12.04 and 12.06.[12]

At Step 4, he found that Jayne-Chandler is unable to perform any past relevant work.[13]

At Step 5, he found, based on the testimony of a vocational expert, that Jayne-Chandler, given her age, education, work experience, and residual functional capacity, is capable of

_____

[10] Id. at 17–18.

[11] Id. at 18.

[12] Id. at 19–20.

[13] Id. at 21–22.

making a successful adjustment to other work that exists in significant numbers in the national economy, including assembler, material handler, and laborer.[14]

Under this framework, the ALJ concluded that a finding of "not disabled" was appropriate.

## II.  **Applicable legal standard**

In reviewing a challenge of a final determination by the SSA, the court limits its review "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  As such, the court "review[s] questions of law de novo, but defer[s] to the [Acting] Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  Though the evidence in the record may support multiple conclusions, the court must still uphold an ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human

---

[14] Id. at 22-23.

Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The court therefore "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## III. **Analysis**

Jayne-Chandler challenges the ALJ's Step 3 and Step 5 determinations, raising five issues:  that the ALJ erred by (A) failing to provide "good reasons" for discounting a treating source opinion, (B) impermissibly interpreting raw medical evidence, (C) failing to account for her moderate limitations in concentration, persistence, or pace in his residual functional capacity assessment, (D) failing to account for her degenerative disc disease and obesity in the RFC assessment, and (E) relying on vocational expert testimony based on an allegedly flawed RFC assessment that resulted from the errors above.[15]  After reviewing each issue raised, the court finds no grounds warranting reversal or remand.

---

[15] See Pl. Reply (doc. no. 12) at 1.

**A.  The weight assigned to treating source opinions**

Jayne-Chandler first argues that the ALJ's RFC determination improperly gave little weight to the medical opinion of Jayne-Chandler's treating source physician, Dr. Michelle Gunning, M.D., contravening the treating source rule.  But as discussed below, the ALJ's decision to discount Dr. Gunning's opinion and not give it controlling weight was adequately supported, given Dr. Gunning's brief treatment relationship with Jayne-Chandler and the fact Dr. Gunning limited her medical opinion to a form questionnaire containing no narrative explanations in RFC terms.

Generally, a treating source's opinion on the nature or severity of impairments is given controlling weight if well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record.  See 20 C.F.R. § 404.1527(c)(2).  "[T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2).  Nevertheless, an ALJ may discount the weight given to a treating source opinion where it is inconsistent with other substantial evidence in the record.

20 C.F.R. § 404.1527(c)(2)-(4); 416.927(c)(2)-(4); see also SSR 96-2p, 1996 WL 374188, at *2. When controlling weight is not given, the ALJ may consider an array of factors to determine what weight to grant the opinion, including the length of the treatment relationship, the frequency of examinations, the degree to which relevant evidence supports the opinion, and the opinion's consistency with the record as a whole. See 20 C.F.R. § 404.1527(c)(2) – (6); 416.927(c)(2)-(6).

In determining Jayne-Chandler's RFC, the ALJ gave three reasons for according Dr. Gunning's opinion little weight: Dr. Gunning had a "short treatment relationship" with Jayne-Chandler; Dr. Gunning did not express her opinion in RFC terms, and Dr. Gunning's conclusions about Jayne-Chandler having "[m]arked" limitations were not consistent with the record as a whole.[16] Jayne-Chandler challenges each reason, as insufficiently supported by the record.

With respect to the ALJ's first reason — the short treatment relationship, Jayne-Chandler correctly identifies that the ALJ erred by stating Jayne-Chandler "had seen Dr. Gunning only once" when in fact, she had seen Dr. Gunning twice.[17] But

_____

[16] Admin. R. at 21.

[17] See Pl. Mot. to Reverse (doc. no. 8) at 2 (citing Admin. R. at 421, 426, 428-30).

8

this error is harmless.  The difference between one and two meetings does not undermine the ALJ's ultimate conclusion that there had been insufficient contact between Jayne-Chandler and Dr. Gunning to give Dr. Gunning a "longitudinal view of [Jayne-Chandler] that another treating source might generally have."[18] This reason is sufficient for not giving Dr. Gunning's opinion controlling weight, but it is a questionable ground for according the opinion little weight, especially where the same critique can be raised against the other medical opinion evidence in the record.

The ALJ's second stated reason – Dr. Gunning's failure to state her opinion in RFC terms – by comparison, does constitute a good reason for giving Dr. Gunning's opinion.  As the Acting Commissioner notes, "medical opinions," as defined by social security regulations, must reflect judgments about "what [a claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).  Dr. Gunning's opinion contained no such judgments, and in fact, offered little to no substance beyond a check-off form that rated Jayne-Chandler's symptoms and

---

[18] Admin. R. at 21; see also 20 C.F.R. § 404.1527(a)(2).

limitations on a five-point scale.[19]  "That itself goes a long
way toward supporting the ALJ's determination to accord Dr.
[Gunning's] opinion little weight."  See Purdy v. Berryhill, 887
F.3d 7, 13 (1st Cir. 2018) (holding that an SSA ALJ properly
discounted a medical opinion that had "no discussion or
analysis").  By contrast, the other medical experts supplemented
their findings with narrative explanations about the bases for
their conclusions and offered opinions on what Jayne-Chandler
can still do despite her impairments.[20]  As such, the ALJ's
weight decision was proper.

Because the ALJ's first two reasons for discounting
Dr. Gunning's opinion have substantial support in the record as
a whole, the ALJ's ultimate weight decision passes muster, and
the court need not address the ALJ's third reason – consistency.
See Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d
747, 749 (1st Cir. 1987); see also McNelley v. Colvin, No. 15-
1871, 2016 WL 2941714, at *2 (1st Cir. Apr. 28, 2016); Arroyo v.
Barnhart, 295 F. Supp. 2d 214, 221 (D. Mass. 2003) (Neiman, J.)
("[A]n administrative law judge's decision can still pass muster
if the other reasons given to accord medical reports little

---

[19] Admin. R. at 419-20.

[20] Admin. R. at 56-66, 347-52.

10

weight are adequately supported." (citations omitted)).  For similar reasons, the ALJ also did not fail to grasp the significance of Dr. Gunning's findings, contrary to Jayne-Chandler's suggestion.[21]  Accordingly, the ALJ's credibility determinations were sufficiently supported.

**B.    Paragraph B Criteria**

Jayne-Chandler next argues that the ALJ's "Paragraph B" criteria findings, which served as the bases for his RFC, were impermissibly based only on lay assessments of raw medical evidence and thus not supported by substantial evidence.[22]  At Steps 2 and 3, the ALJ must assess a claimant's mental impairments using the Paragraph B criteria.  See 20 C.F.R. § 404.1520a(c)(3)-(4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b), (E).  In January 2017, the Social Security Administration revised these criteria.  See 81 Fed. Reg. 66138 et seq. (Sept. 26, 2016).  The ALJ made his findings under these new criteria, but in doing so, relied in part on the September 2016 opinion of the state agency reviewer, Dr. John J. Warren, Ed. D.,[23] who opined that Jayne-Chandler's mental impairments did

---

[21] Pl. Mot. to Reverse (doc. no. 8) at 4-5.

[22] Id. at 5-8.

[23] Admin. R. at 20.

not satisfy the old Paragraph B severity criteria.  Jayne-Chandler asserts that because Dr. Warren's opinion was "obsolete," any decision made by the ALJ must have been based on improper lay determinations.

This argument lacks merit.  Under social security regulations, the assessment of the Paragraph B criteria is properly performed by the ALJ, not by a physician.  20 C.F.R. §§ 404.1520a, 416.920a; see also 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any [Listing], . . . the final responsibility for deciding these issues is reserved to the Commissioner."). The ALJ is "not required to adopt prior administrative medical findings" when issuing decisions.  20 C.F.R. § 404.1513a(b)(1); see SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017).  And while the ALJ has discretion to return a file to the state agency or seek additional evidence from a medical expert to complete his or her Paragraph B consideration, see 20 C.F.R. § 404.1513a(b)(2), Jayne-Chandler cites no authority suggesting that an updated opinion is required.

In Benoit v. Berryhill, No. 18-cv-61-SM, 2018 WL 6304353 (D.N.H. Dec. 3, 2018), a recent social security appeal decision by Judge McAuliffe, the court rejected this very argument when the claimant argued that his case should be remanded because the

ALJ made adverse Paragraph B findings under the new criteria based on a medical expert opinion rendered before the regulatory revision. See id. at *8-9. Judge McAuliffe found that the expert's assessment was not compromised just because it used the prior criteria. Id. at 20 n.14. Moreover, he found that even if the Paragraph B revision somehow tainted the expert's assessment, the ALJ's decision was supported by other evidence in the record, including the claimant's own hearing testimony. Id. at *9. Accordingly, the court found no grounds for remand.

Here, ALJ Menard completed his Paragraph B assessment using the revised criteria and cited to facts from the record to support the degree of limitation assessed in each functional area.[24] He drew these facts from general observations made by several medical experts, witness testimony, and the ALJ's lay observations, but not raw medical data.[25] Indeed, in her motion, Jayne-Chandler points to not one instance where the ALJ interpreted raw data. To the extent the ALJ referenced Jayne-Chandler's medical records, it was to draw upon behavioral observations made therein by her medical examiners.[26] An ALJ is

––––––––––––––––––––

[24] Admin. R. at 16–18.

[25] Id. at 16–18.

[26] Id. at 15–17. These observations include that "[Jayne-Chandler] performed a variety of tasks quickly and accurately"; "her problem solving skills were also sharp and clear"; "she

qualified to make judgments from such observations.  See Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) ("[ALJ] is [not] precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [he] does not overstep the bounds of a lay person's competence and render a medical judgment."); Guzman v. Colvin, No. 15-cv-230-PB, 2016 WL 1275036, at *3-4 (D.N.H. Apr. 1, 2016) (Barbadoro, J.) ("[S]imple statements about actions [the claimant] could perform [like being] 'able to sit down and stand up without difficulty, get on and off the exam table without difficulty, don and doff shoes without difficulty . . . [are] not inscrutable medical terminology that required an expert to interpret.").

In addition, substantial evidence from the record supports the ALJ's assessment for each Paragraph B criterion.  Jayne-Chandler does not raise any specific objections to the facts the ALJ considered or his ultimate findings for the first three Paragraph B criterion.  The court sees no need to delve deeper to find a reversible error.  See Bourque v. Berryhill, No. 17-CV-268-LM, 2018 WL 3536087, at *11 (D.N.H. July 23, 2018)

---

engages easily with medical providers, but also appeared weepy and depressed"; "she communicates with her family, friends, and neighbors"; and "she does all the shopping and errands for her family."  See id.

(McCafferty, J.) (finding that a claimant had waived issues that he failed to previously raise).

Substantial evidence also supports the ALJ's findings for the fourth criterion (mild limitations in adapting or managing oneself). Jayne-Chandler asserts that the ALJ considered the wrong evidence in assessing this criterion by considering her daily living activities – a factor replaced by the 2017 revision.[27] But the 2017 revision explains that daily living activities continue to provide a central "source of information about all four of the Paragraph B areas of mental functioning."[28] In addition, evidence from Jayne-Chandler's daily living activities was supplemented by other observations made by Dr. Weil and in Dr. Warren's assessment,[29] which remain highly probative as the revised "adapt or manage oneself" criterion "is not new or different from what adjudicators [were] already accustomed to evaluating and documenting" for the fourth criterion. 81 Fed. R. 661456. Even though the record documents a few instances where Jayne-Chandler could not regulate her emotions, these instances do not undermine the fact that the

---

[27] Pl. Mot. to Reverse (doc. no. 8) at 6-8.

[28] 81 Fed. Reg. at 66143.

[29] Admin. R. at 60; see also id. at 21 (giving opinion "great weight").

ALJ's ultimate finding is consistent with the greater record as a whole. See Irlanda Ortiz, 955 F.2d at 769 (a reversal is warranted only where the ALJ's conclusions are unsupported by the record as a whole, not where evidence supports alternative conclusions).

Finally, to the extent any flaws may exist with the ALJ's Paragraph B analysis, such flaws do not doom the ALJ's RFC. Jayne-Chandler contends that "[l]ong standing precedent in this circuit holds that RFC assessments, which are based on the "Paragraph B" assessments in cases, such as this, involving mental impairments, must be based on medical expert opinion."[30] But as noted by Judge McAuliffe, the Paragraph B criteria and the RFC "are two different things." Benoit v. Berryhill, No. 18-CV-61-SM, 2018 WL 6304353, at *8 (D.N.H. Dec. 3, 2018). The Paragraph B criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. After Step 3, the ALJ no longer looks to the Paragraph B findings and instead draws from the medical expert opinion to assess a claimant's RFC. See id. The ALJ's decision comported

---

[30] Pl. Mot. to Reverse (doc. no. 8) at 8 (citing Nguyen v. Chater, 172 F.3d 31, 34 (1st Cir.1999); Manso-Pizarro, 76 F.3d at 16; Gordils, 921 F.2d at 329).

with this framework and, as discussed below, relied on expert medical opinion in assessing Jayne-Chandler's RFC.  Remand is therefore unwarranted.

### C.    Concentration, persistence, and pace limitations

Jayne-Chandler's third argument on appeal is that the ALJ erred by not including any restrictions relating to her moderate difficulties in concentration, persistence, or pace in his RFC. This argument is unpersuasive.

As a general rule, when an ALJ relies on "an acceptable medical source" opining that "despite moderate limitations in concentration, persistence, or pace the claimant is able to do unskilled work or simple routine work," no further restrictions need be included in an RFC.  Mudgett v. Colvin, No. 14-cv-143-JD, 2014 WL 6977863, at *3 (D.N.H. Dec. 9, 2014) (DiClerico, J.); Montore v. Astrue, No. 11-CV-190-SM, 2012 WL 3583346, at *7 (D.N.H. Aug. 20, 2012) (McAuliffe, J.) (same).  In Mudgett, for example, Judge DiClerico held that an ALJ adequately accounted for moderate difficulties in concentration, persistence, and pace when he relied on an expert opinion stating the claimant could do unskilled work in making the RFC assessment.  2014 WL 6977863, at *3.  Likewise, in Montore, Judge McAuliffe held that an ALJ's vocational hypotheticals did not fail to account for the claimant's moderate limitations in concentration,

persistence, and pace where there was medical evidence that the limitation did not rule out the ability to do unskilled, routine work.  2012 WL 3583346, at *7.

Jayne-Chandler argues that this general rule is in tension with dicta from Dimambro v. US Soc. Sec. Admin., Acting Comm'r, No. 16-CV-486-PB, 2018 WL 301090, at *10 (D.N.H. Jan. 5, 2018) (Barbadoro, J.), in which Judge Barbadoro stated that when "an ALJ has identified moderate limitations in concentration, persistence, or pace, his RFC finding or hypothetical at step five must either adopt restrictions that address 'staying on task' or explain why such restrictions are unwarranted."[31]  The court sees no tension among the holdings of this District's judges.  In Mudgett, the ALJ explained why restrictions were unwarranted by citing to the medical expert's opinion that the claimant could do unskilled work in making the RFC.  See 2014 WL 6977863, at *3.  And in Montore, the ALJ similarly accepted the medical expert's assessment, and even included a more restrictive limitation than the one the expert proposed.  See 2012 WL 3583346, at *7.

Likewise, in crafting Jayne-Chandler's RFC, the ALJ in this case adequately explained why restrictions as to concentration,

---

[31] Pl. Reply (doc. no. 12) at 3.

persistence, or pace were unwarranted by relying on and referencing Dr. Warren's opinion that Jayne-Chandler could "sustain the mental demands associated with carrying out simple tasks over the course of [a] routine workday/workweek within acceptable attention, persistence and pace tolerance."[32] Accordingly, the ALJ's RFC restriction to "simple and routine tasks,"[33] without further restrictions, adequately accounts for plaintiff's moderate concentration, persistence and pace limitations.

## D. Excluding degenerative disc disease and obesity from the RFC assessment

Fourth, Jayne-Chandler argues that the ALJ erred by failing to consider limitations and restrictions imposed by her nonsevere degenerative disc disease and obesity in the RFC.[34] The Acting Commissioner contends that it was Jayne-Chandler's burden — not the ALJ's — to show specific limitations based on either her degenerative disc disease or obesity, that she did

---

[32] Admin. R. at 63; see also id. at 20 ("Dr. Warren also felt that the claimant retained the capacity to perform basic tasks, relate well enough for routine workplace purposes, and can adapt and manage herself for routine workplace purposes.  This is persuasive." (citing Admin. R. at 63-64)).

[33] Id. at 18.

[34] Pl. Mot. to Reverse (doc. no. 8) at 10 (citing SSR 96-8p, 1996 WL 374184, at *5).

not do so, and that no physician found that such conditions imposed additional limitations or restrictions.[35]  Further, the Acting Commissioner contends that the ALJ reasonably found that Jayne-Chandler's obesity and degenerative disc disease were non-severe and did not limit her functionality.[36]  The court agrees.

With respect to Jayne-Chandler's obesity, the ALJ individually assessed that there was "no evidence that the claimant's obesity has any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning."[37] And despite Jayne-Chandler's assertion to the contrary, the ALJ specifically "considered the potential impact of obesity in causing or contributing to co-existing impairments," which included depression and anxiety.[38]

The ALJ similarly "recognized" Jayne-Chandler's degenerative disc disease diagnosis and concluded, based on her conservative treatment plan, that the diagnosis was a nonsevere

---

[35] Def. Mot. to Affirm Mem. (doc. no. 11-1) at 14 (citing West v. Berryhill, No. 17-1170, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017) (unpublished, citations omitted)); Boston v. Astrue, No. 10-cv-00250-PB, 2011 WL 2491120, at *10 n.19 (D.N.H. June 22, 2011) (Barbadoro, J.) (noting that "[the] claimant bears the burden of proving the limitations that factor into the RFC")).

[36] Id. at 14-15.

[37] Admin. R. at 16.

[38] Id.

impairment.[39]  Jayne-Chandler argues that her clinical social
worker Mr. Rosario noted she struggled with pain even though she
completed physical therapy,[40] but this note was made prior to
Jayne-Chandler beginning the pool therapy treatment plan the ALJ
found to be conservative.[41]  See McNelley v. Colvin, No. 15-1871,
2016 WL 2941714, at *2 (1st Cir. 2016) (finding that a
conservative treatment undercut a claimant's allegations).

Finally, Jayne-Chandler argues that there was no basis for
the ALJ to find that she had no exertional limitations despite
her obesity and degenerative disc disease, as physical
impairments were not considered by the State Agency.  But Jayne-
Chandler had the burden to present evidence of exertional
limitations arising from these impairments or, at the very
least, present enough evidence to alert the ALJ to the issue.
See West, 2017 WL 6499834, at *1; Boston, 2011 WL 2491120, at
*10 n.19.  She did not do so in her initial motion[42] and in her
Reply, points to only one passing statement from her hearing

---

[39] Id.

[40] Pl. Mot. to Reverse (doc. no. 8) at 11.

[41] Admin. R. at 437.

[42] Pl. Mot. to Reverse (doc. no. 8) at 11-12 (instead arguing
that it "defies common sense to conclude that an obese
individual with a medically determinable back impairment can
lift and carry" heavy loads for a portion of the workday); see
also Pl. Reply (doc. no. 12) at 4-5.

testimony, conducted with the aid of counsel, possibly suggesting a physical limitation – specifically that her missing disk "just makes it hard to [do] any of my lifting, sitting, standing, all that good stuff, moving."[43]  Upon learning this fact (and without a prompt from counsel), the ALJ inquired further regarding Jayne-Chandler's physical condition and medication.  She responded that she felt "sore, antsy," took only ibuprofen, would not take opiates, and would be getting shots in her back later that year.[44]  Neither she nor her counsel went any further to demonstrate that her pain or present condition was so severe as to impose exertional limitations.

Crediting this statement and considering the other medical evidence about Jayne-Chandler's obesity and improving back pain, substantial evidence still supports the ALJ's ultimate determination.  The ALJ was not required to find that Jayne-Chandler's degenerative disc disease or obesity limited her

_____

[43] Pl. Reply (doc. no. 12) at 4 (quoting Admin R. at 48).

[44] Admin R. at 48:

    Q:   "Are you feeling it now as you sit?"
    A:   "Yeah, sore, antsy.  I keep moving."
    Q:   "Do you take any medication for the –"
    A:   "Ibuprofen."
    Q:   "Your PCP – not the PCP or the ortho have recommended
         anything stronger?"
    A:   "Oh, yeah, I have an appointment to go get shots in my
         back in September.  I won't take opiates."

physically on a record so sparsely suggesting that such
limitations could exist.  Nor was he required to develop the
record further.  Although "[an ALJ] has a duty to develop an
adequate record from which a reasonable conclusion can be
drawn," Perry v. Colvin, No. 13-CV-229-JL, 2014 WL 4725380, at
*1 (D.N.H. Sept. 23, 2014), this duty "is only triggered once
[the ALJ is] alerted by the record to the presence of an issue."
Gillis v. Astrue, No. 08-cv-225-SM, 2009 WL 948655, at *6
(D.N.H. Apr. 6, 2009) (McAuliffe) (quoting Santiago v. Sec'y of
Health & Human Servs., 944 F.2d 1, 6 (1st Cir. 1991)).  Again,
the problem here is that neither Jayne-Chandler's testimony nor
the other evidence of record goes far enough to raise a
meaningful issue as to whether Jayne-Chandler's degenerative
disc disease and obesity physically limited her ability to
work.[45]

Despite Jayne-Chandler's assertion to the contrary, the
ALJ's limitations determination was not based on impermissible
lay assessments of medical evidence and instead merely reflected
the reality that the record contained little to no evidence

---

[45] The court declines to presume, as Jayne-Chandler appears to
request, see Pl. Reply (doc. no. 12) at 6, that an individual
with obesity inherently has exertional limitations under a
"common sense" theory.

supporting a physical limitation.[46]  In Manso-Pizarro, the Court
of Appeals remanded an adverse social security disability
determination where medical reports, "coupled with identifiable
diagnoses and symptoms" like tachycardia "that seem[ed] to
indicate more than mild impairment," should have "alerted the
ALJ to the need for expert guidance regarding the extent of the
claimant's residual functional capacity to perform her
particular past employment."  Id. at 19.

    Here, by contrast, there are no medical reports or
identifiable diagnoses that indicate more than mild impairment.
There are no medical records suggesting that her obesity had a
specific or quantifiable impact on her pulmonary,
musculoskeletal, and cardiac functioning.[47]  And the only
evidence suggesting that Jayne-Chandler suffered physical
limitations is from her own testimony, during which she
testified that she manages her back pain with ibuprofen and pool
therapy.[48]  Unlike the medical reports in Manso-Pizarro, this
observational evidence was not so "ramified that understanding
[them] require[d] more than a layperson's effort at a

_____

[46] See id. at 6 (citing Manzo-Pizarro, 76 F.3d at 16.

[47] Admin. R. at 16.  Additionally, Dr. Warren's 2016 report
concluded that based on the strength factors of the physical
RFC, Jayne-Chandler had "[n]o somatic limitations."  Id. at 65.

[48] Id. at 16 (citing id. at 399-400); see also id. at 48.

commonsense functional capacity assessment." [76 F.3d at 19](). Further, there are no indications that the ALJ "played doctor" by reasoning that Jayne-Chandler "exaggerat[ed] her back pain." See [Hill v. Colvin](), [807 F.3d 862, 868 (7th Cir. 2015)](). Rather, the ALJ appears to have taken Jayne-Chandler's testimony at face value and also gave her (and her counsel) several opportunities to clarify any physical limitations imposed by her "non-severe" conditions.

Accordingly, the administrative record sufficiently supports the ALJ's decision not to include physical limitations in the RFC assessment. Remand is therefore unwarranted.

### E. Vocational expert testimony

Fifth, Jayne-Chandler argues that the vocational testimony does not provide substantial evidence for the ALJ's decision because it was based on an RFC rendered erroneous by the issues Jayne-Chandler raised above.[49] The ALJ was required to include in his RFC finding and consequent hypothetical questions only those limitations he found credible. See [Perez v. Sec'y of Health & Human Servs.](), [958 F.2d 445, 447-48 (1st Cir. 1991)](). As discussed above, the court finds no flaws with the ALJ's RFC

---

[49] Pl. Mot. Order to Reverse Decision (doc. no. [8]()) at 12-13.

determination.  The ALJ was therefore entitled to rely on vocational expert testimony based on the ALJ's RFC.

Jayne-Chandler also takes issue with the limitation that she have "no more than frequent interaction with supervisors, coworkers, and the general public,"[50] as the <u>Dictionary of Occupational Titles</u> ("DOT") does not address the frequency of interactions between supervisors and employers.  Jayne-Chandler waived this argument by not raising it at her administrative hearing.  See <u>Montore</u>, 2012 WL 3583346 at *7 (holding that an attorney on appeal is not permitted to scan record looking for conflicts to raise for first time on appeal, as SSR 00-4p only requires resolution of conflict if it was identified).  But even if she did not waive this argument, the vocational expert directly testified that his answer — that an individual that was limited to simple routine tasks and that could have no more than frequent social interactions could find work — was consistent with the DOT.  Absent any apparent or actual conflict between the vocational expert's answer and the DOT, the ALJ was under no obligation to inquire further.  Furthermore, any failure to do so, in the absence of an actual inconsistency between the expert testimony and the DOT, would be entirely harmless.  See <u>Baker v.</u>

---

[50] Admin. R. at 21.

_Astrue_, No. 10-454-SM, 2011 WL 6937505, at *15 (D.N.H. Nov. 15, 2011) (McCafferty, J.).

## IV. <u>Conclusion</u>

In sum, the court denies Jayne-Chandler's motion to reverse[51] and grants the Commission's motion for an order affirming its disability insurance benefits decision.[52]  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 5, 2019

cc:  Alexandra M. Jackson, Esq.
     Hugh Dan Rappaport, Esq.
     Luis A. Pere, Esq.

---

[51] Doc. no. 8.

[52] Doc. no. 11.